ACCEPTED
15-25-00156-cv
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
12/12/2025 1:40 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00156-CV**

In the Fifteenth District Court of Appeals, Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
12/12/2025 1:40:55 PM
CHRISTOPHER A. PRINE
Clerk

TEXAS RACING COMMISSION,
*Appellant,*

v.

TOBY KEETON,
*Appellee.*

On Appeal from the 126th District Court of Travis County, Texas
The Honorable Aurora Martinez Jones, Presiding

**APPELLANT TEXAS RACING COMMISSION'S BRIEF**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

LAUREN MCGEE
State Bar No. 24128835
Assistant Attorney General
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-3203
Lauren.McGee@oag.texas.gov

ATTORNEY FOR APPELLANT
TEXAS RACING COMMISSION

December 12, 2025

ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

*Plaintiff/Appellee:*           *Counsel:*

Toby Keeton

Joseph C. DeAngelis, pro hac vice
Clark O. Brewster
State Bar No. 786841
Brewster & DeAngelis, PLLC
2617 E. 21st Street
Tulsa, OK 74114

Don Griffin, Jr.
State Bar No. 08456975
Vinson & Elkins, LLP
845 Texas St., Ste 4700
Houston, TX 77002-2946

*Defendant/Appellant:*       *Counsel:*

Texas Racing Commission

Lauren McGee
State Bar No. 24128835
Assistant Attorney General
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

## REFERENCES TO THE RECORD AND ABBREVIATIONS

| | |
|---|---|
| Appellee/ Mr. Keeton | Toby Keeton |
| Appellant/ Commission | Texas Racing Commission |
| C.R. [page] | Clerk's Record |
| Final Judgment | Order Denying Defendant's First Amended Plea to the Jurisdiction signed by Judge Martinez Jones on October 9, 2025 |
| Texas A&M | Texas A&M University Veterinary Medical Diagnostic Laboratory |
| UC Davis | Kenneth L. Maddy Equine Analytical Chemistry Laboratory at the University of California at Davis |
| 319.362 (2024) | 16 Texas Administrative Code section 319.362, prior to changes that went into effect on February 5, 2025 |
| 319.362 (2025) | 16 Texas Administrative Code section 319.362 as it exists currently, with changes that went into effect on February 5, 2025 |

# TABLE OF CONTENTS

Identity of Parties and Counsel ...................................................................ii

References to the Record and Abbreviations.......................................... iii

Table of Contents.......................................................................................iv

Index of Authorities..................................................................................vi

Statement of the Case ...............................................................................ix

Statement on Oral Argument ....................................................................x

Issues Presented ........................................................................................xi

    1. Whether the delay in setting a hearing on the merits violated Mr. Keeton's due process rights when the Commission had a valid justification for the delay directly related to the government interest, the risk of erroneous deprivation was low, and Mr. Keeton could have sought a stay of the suspension pending the outcome of the merits hearing, but chose not to. ...................................................................................xi

    2. Whether Mr. Keeton's 42 U.S.C. § 1983 claim is barred by sovereign immunity..............................................................................xi

    3. Whether the Commission exceeded its statutory authority by sending samples to UC Davis for testing after complying with the requirements in Texas Occupations Code section 2034.002, and whether Mr. Keeton's ultra vires claim against the Commission waives sovereign immunity.................................xi

    4. Whether the Commission properly determined that Mr. Keeton waived his right to split sample testing by not requesting split testing within 48 hours from when he was notified of the positive results as required by 16 Texas Administrative Code section 319.362(c) (2024) and 319.362(b) (2025). ......................................................................................xi

Statement of Facts......................................................................................1

Standard of Review ...............................................................................3

Summary of the Argument ....................................................................4

Argument ...............................................................................................7

I.  The merits hearing was set as soon as practicable, given when the necessary discovery and evidence was produced. ..........................8

   A. Importance of the private interest and the harm occasioned by delay. ................................................................................................10

   B. Justification offered by Government for delay and relation to underlying governmental interest. ...............................................10

   C. The likelihood that the interim decision may have been mistaken.. .............................................................................................................12

II. Mr. Keeton's second claim fails because 42 U.S.C. 1983 claims against the state are barred by sovereign immunity and Mr. Keeton's due process rights have not been violated. ..........................14

III.Mr. Keeton's third claim fails because the Commission complied with statute in selecting and sending samples to UC Davis......................15

   A.   The Commission's actions were within its statutory authority.

   .............................................................................................................16

IV.Mr. Keeton's fourth claim fails because the Commission complied with statute and agency rules.................................................................19

V. Mr. Keeton's fifth claim fails because he lacks standing. ...................21

Conclusion & Prayer.............................................................................25

Certificate of Service .........................................................................28

Index of Appendices..............................................................................29

# INDEX OF AUTHORITIES

## Cases

*Barry v. Barchi*,
443 U.S. 55 (1979) ...................................................................9, 11, 12

*Boddie v. Connecticut*,
401 U.S. 371 (1971) .................................................................................9

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009) ....................................................................6

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .................................................................................9

*Creedmor-Maha Water Supply Corp. v. Tex. Comm'n of Envt'l Quality*,
307 S.W.3d 505 (Tex. App.—Austin 2010, no pet.)...............................8

*Data Foundry, Inc. v. City of Austin*,
620 S.W.3d 692 (Tex. 2021) ..................................................................23

*Federal Deposit Ins. Corp. v. Mallen*,
486 U.S. 230 (1988) ...............................................................................10

*Heckman v. Williamson Cty.*,
369 S.W.3d 137 (Tex. 2012) ...............................................................3, 4

*Houston Belt & Terminal Ry. Co. v. City of Houston*,
487 S.W.3d 154 (Tex. 2016) ....................................................................6

*Howlett v. Rose*,
496 U.S. 356 (1990) .........................................................................14, 15

*In re Abbott*,
601 S.W.3d 802 (Tex. 2020) ..................................................................15

*In re State*,
682 S.W.3d 890 (Tex. 2023) ..................................................................15

vi

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ................................................................23

*Nettles v. GTECH Corp.,*
   606 S.W.3d 726 (Tex. 2020) ......................................................4

*Southwestern Elec. Power Co. v. Lynch,*
   595 S.W.3d 678 (Tex. 2020) ....................................................23

*State v. Naylor,*
   466 S.W.3d 783 (Tex. 2015) ......................................................5

*Tex. A&M Univ. Sys. v. Koseoglu,*
   233 S.W.3d 835 (Tex. 2007) ......................................................4

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,*
   852 S.W.2d 440 (Tex. 1993) ...................................................3, 4

*Tex. Dep't of Parks & Wildlife v. Miranda,*
   133 S.W.3d 217 (Tex. 2004) ...................................................4, 8

**Statutes**

Tex. Occ. Code § 2023.001(a)................................................1, 10

Tex. Occ. Code § 2034.001 .....................................................21

Tex. Occ. Code § 2034.001(b)..................................................16

Tex. Occ. Code § 2034.002 ......................................................6

Tex. Occ. Code § 2034.002(a)...............................................16, 17

Tex. Occ. Code § 2034.004 ......................................................1

Tex. Occ. Code § 2034.005(c) ..................................................19

Tex. Occ. Code §§ 2034.001(a), (b) ............................................1

**Rules**

16 Tex. Admin. Code § 307.62(i) ...............................................2

16 Tex. Admin. Code § 307.68 ................................................................. 10

16 Tex. Admin. Code § 319.301(a) ............................................................ 1

16 Tex. Admin. Code § 319.361(b) ............................................................ 1

16 Tex. Admin. Code § 319.361(c) ............................................................. 2

16 Tex. Admin. Code § 319.362(b) (2025) ............................................... 21

16 Tex. Admin. Code § 319.362(c) (2024) ......................................... 20, 21

# STATEMENT OF THE CASE

*Nature of the Case:* Mr. Keeton filed suit in district court alleging unconstitutional application of Commission rules and statute that violate his Constitutional due process rights and seeking declaratory judgment. C.R. 4-9. The Commission filed a plea to the jurisdiction, arguing that as a matter of law, Mr. Keeton's due process rights have not been violated, so the allegations do not waive the Commission's sovereign immunity.

*Trial Court:* The Honorable Judge Aurora Martinez Jones, sitting in the 126th Judicial District Court, Travis County, Texas.

*Trial Court Disposition:* After a hearing, the trial Court denied the Commission's First Amended Plea to the Jurisdiction. Now, the Commission appeals.

## STATEMENT ON ORAL ARGUMENT

Oral argument is requested because the Commission would like an opportunity to answer any questions not adequately resolved after reading the briefs.

# ISSUES PRESENTED

1. Whether the delay in setting a hearing on the merits violated Mr. Keeton's due process rights when the Commission had a valid justification for the delay directly related to the government interest, the risk of erroneous deprivation was low, and Mr. Keeton could have sought a stay of the suspension pending the outcome of the merits hearing, but chose not to.

2. Whether Mr. Keeton's 42 U.S.C. § 1983 claim is barred by sovereign immunity.

3. Whether the Commission exceeded its statutory authority by sending samples to UC Davis for testing after complying with the requirements in Texas Occupations Code section 2034.002, and whether Mr. Keeton's ultra vires claim against the Commission waives sovereign immunity.

4. Whether the Commission properly determined that Mr. Keeton waived his right to split sample testing by not requesting split testing within 48 hours from when he was notified of the positive results as required by 16 Texas Administrative Code section 319.362(c) (2024) and 319.362(b) (2025).

## STATEMENT OF FACTS

The Texas Racing Commission is the state agency responsible for the licensing and regulation of horse and greyhound racing in Texas. Tex. Occ. Code § 2023.001(a). The Commission's licensing responsibilities extend to licensing those who train racehorses, such as Mr. Keeton.

The Commission is statutorily required to conduct testing to determine whether a prohibited substance has been used in a race animal during a race and to promulgate rules pertaining to such testing. Tex. Occ. Code §§ 2034.001(a), (b). Rule 319.301 allows the collection of hair, urine, blood, saliva, tissue, or other bodily substance to be taken for the purpose of testing for prohibited substances. 16 Tex. Admin. Code § 319.301(a). Statute dictates that the trainer of an animal is responsible for ensuring no prohibited substance has been administered. Tex. Occ. Code § 2034.004. Horses are tested in accordance with 16 Texas Administrative Code section 319.332 if they finish first in a race. 16 Tex. Admin. Code § 319.361(b). Testing may occur if: "(1) a horse that finishes second; (2) a beaten favorite; (3) for a race with a gross purse of $50,000 or more, the horse that finishes third; (4) a horse selected at random by the stewards; and (5) any other horse designated for cause by the

stewards or the commission veterinarian." 16 Tex. Admin. Code § 319.361(c).

Many horses trained by Mr. Keeton were subject to testing in September, October, and November of 2024. Of the samples taken, 24 tested positive for prohibited substances; 22 tested positive for Carmoterol, and one tested positive for d-Methamphetamine. C.R. 727-750. One sample had split testing done, which also came back positive for Carmoterol.[1]

On January 30, 2025, pursuant to authority granted in Texas Occupations Code section 2034.006(a), the Commission summarily suspended Mr. Keeton's license for the positive tests. C.R. 29. Mr. Keeton requested a hearing before the board of stewards, which must occur within seven calendar days after the day the licensee is suspended. 16 Tex. Admin. Code § 307.62(i). Mr. Keeton's hearing was set for February 4, 2025, but his counsel became ill, and the hearing was reset to February 11, 2025, on agreement of the parties. C.R. 89- 90. The board of stewards declined to lift the summary suspension and notified Mr. Keeton that he

---

[1] The result at C.R. 750 is the result of a split sample test for the original positive result at C.R. 728.

had the right to appeal the decision to the Commission. C.R. 91. Mr. Keeton appealed to the Commission, and a hearing before SOAH occurred on May 22, 2025. C.R. 755-760. A final decision had not been made in the SOAH proceeding at the time of the district court hearing on the Commission's First Amended Plea to the Jurisdiction.[2] Mr. Keeton filed suit in district court on April 9, 2025, before the administrative process concluded. C.R. 3.

Mr. Keeton has not sought a stay of the summary suspension as allowed by 16 Texas Administrative Code section 307.68.

## STANDARD OF REVIEW

The standard of review for subject matter jurisdiction decisions is de novo.

Subject-matter jurisdiction is essential to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Subject-matter jurisdiction is properly challenged in a plea to the jurisdiction. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 149 (Tex. 2012).

---

[2] The Commission asks this Court to take judicial notice of the final order resulting from the SOAH hearing which was adopted by the Commission at an open meeting on October 8, 2025. Appendix A.

The plaintiff has the burden of pleading facts sufficient to demonstrate the trial court's jurisdiction over the plaintiff's claims. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. In the face of a plea to the jurisdiction challenging the pleadings, the court should look to the pleader's intent, construe the pleadings liberally in favor of jurisdiction, and accept the allegations in the pleading as true to determine whether the plaintiff has alleged facts sufficient to demonstrate, affirmatively, that the trial court has jurisdiction to hear the claim. *Heckman*, 369 S.W.3d at 150. If the plaintiff's pleadings negate the existence of jurisdiction by revealing an incurable defect, the claims should be dismissed without an opportunity for the plaintiff to replead. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007).

Whether a trial court has subject-matter jurisdiction over the plaintiff's claims is a question of law. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). For that reason, a court will review a ruling on a plea to the jurisdiction de novo. *Nettles v. GTECH Corp.*, 606 S.W.3d 726, 731 (Tex. 2020).

## SUMMARY OF THE ARGUMENT

The trial court erred in denying the Commission's First Amended

Plea to the Jurisdiction. Mr. Keeton brought five claims against the Commission, but none of his claims identify a valid waiver of sovereign immunity or confer subject matter jurisdiction on the court.

Mr. Keeton's due process rights were not violated by the Commission's application of 16 Texas Administrative Code section 307.62(i). Mr. Keeton could have sought a stay of the summary suspension until the Commission made a final decision on the merits of the case, but he did not. The Commission could not set a hearing on the merits until all laboratory evidence was received from UC Davis. This is a valid justification for not setting the merits hearing immediately and is directly related to the government's underlying interest of ensuring the integrity of racing. The risk of error is minimal as 24 separate tests were conducted, and all came back positive.

Mr. Keeton's claim brought under 42 U.S.C. § 1983 is barred by sovereign immunity, and relief of any kind cannot be granted, as a court cannot grant relief if it lacks jurisdiction. *State v. Naylor*, 466 S.W.3d 783, 805 (Tex. 2015) ("A court without jurisdiction has power to do only one thing: dismiss.").

The Commission did not exceed its statutory authority by sending

samples to UC Davis because the Commission selected UC Davis in consultation with Texas A&M as allowed by statute. Tex. Occ. Code § 2034.002. Additionally, claims that an action was in excess of statutory authority or ultra vires claims cannot be brought against an agency because they are barred by sovereign immunity. Ultra vires claims can only be brought against a government actor in an attempt to reassert control over the state. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). Mr. Keeton brings his ultra vires claim against the Commission, which is protected by sovereign immunity.

Mr. Keeton's fourth and fifth claims are related. Mr. Keeton waived his right to split sample testing by not requesting split testing within a 48-hour period as required by rule. The Commission rule allows a trainer to request split testing, but that request must be made to the executive secretary within 48 hours after notice of the positive result. Mr. Keeton received notice of the positive results on January 30, 2025, but he did not request split testing until February 3, 2025. Because the 48-hour period had lapsed, he waived his right to split testing.

The rule outlining the procedure for split testing, 16 Texas Administrative Code 319.362, was amended in 2024. The amended version of the rule went into effect on February 4, 2025. Mr. Keeton complains that the version of section 319.362 that went into effect on February 4, 2025, lacks several safeguards and guarantees provided for in the version effective before February 4, 2025. However, both the 2024 and 2025 versions of section 319.362 require a trainer to request split testing within 48 hours after the trainer is notified of the positive result. Even if this Court were to grant Mr. Keeton the relief he seeks, declaring the 2025 version of section 319.362 is inapplicable to him or invalid, the outcome does not change. Because granting Mr. Keeton the relief he seeks does not redress the issue he complains of, Mr. Keeton lacks standing and the court lacks subject matter jurisdiction.

None of the claims brought by Mr. Keeton identify a valid waiver of sovereign immunity or confer subject matter jurisdiction on the court. Therefore, a plea to the jurisdiction is proper and should have been granted.

## ARGUMENT

The Commission's First Amended Plea to the Jurisdiction should

have been granted because the Commission has sovereign immunity with respect to all of Mr. Keeton's claims and because Mr. Keeton has failed to state a claim which would confer subject matter jurisdiction on the court. *See Miranda*, 133 S.W.3d at 227 (If the pleadings affirmatively negate the existence of jurisdiction, then the plea should be granted.).

The mere fact that a plaintiff alleges unconstitutional acts does not, alone, demonstrate that sovereign immunity has been waived, and the plaintiff has invoked the trial court's jurisdiction. *Creedmor-Maha Water Supply Corp. v. Tex. Comm'n of Envt'l Quality*, 307 S.W.3d 505, 515 (Tex. App.—Austin 2010, no pet.).

## I. The merits hearing was set as soon as practicable, given when the necessary discovery and evidence was produced.

Mr. Keeton claims 16 Texas Administrative Code section 307.62(i) is constitutionally invalid as applied in this case because the delay in a merits hearing before the board of stewards violated his due process rights. C.R. 14-16. However, the delay in setting the SOAH merits hearing was not a deprivation of due process because the rule provides a way for Mr. Keeton to change the summary suspension sooner, and the state had a legitimate justification for delay.

"[A] rule may be held constitutionally invalid as applied when it

operates to deprive an individual of a protected right although its general validity as a measure enacted in the legitimate exercise of state power is beyond question." *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971).

Procedural due process is a constitutional right guaranteed by the Fourteenth Amendment to the United States Constitution. U.S. Const. art. XIV. The question in this case is whether the time between Mr. Keeton's summary suspension and the merits hearing constitutes an unjust delay that violates Mr. Keeton's procedural due process rights.

The Supreme Court has recognized that "at some point a delay in the post-termination hearing would become a constitutional violation," but there is no set timeline for when such a violation occurs. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 547 (1985); *see also Barry v. Barchi*, 443 U.S. 55, 66 (1979). Rather, to determine whether a delay is just, the court must consider "the importance of the private interest and the harm to this interest occasioned by the delay; the justification offered by the Government for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken." *Federal Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 242 (1988).

**A. Importance of the private interest and the harm occasioned by delay.**

Both the Court and the Commission recognize that the loss of livelihood is a serious matter, but Commission rules provide that a trainer whose license has been summarily suspended can seek a stay of that summary suspension pending the outcome of the merits hearing. 16 Tex. Admin. Code § 307.68. A stay in the summary suspension would allow Mr. Keeton to resume training until the Commission makes a final decision. *Id.* Mr. Keeton has ***not*** sought a stay of his summary suspension. Mr. Keeton has an avenue available for seeking to have the summary suspension lifted, allowing him to resume work, mitigating the harm he is facing, and he has chosen not to take advantage of that option.

**B. Justification offered by Government for delay and relation to underlying governmental interest.**

The second factor, the justification offered by the Government for the delay and its relation to the underlying governmental interest, weighs in favor of the Commission. The Commission is the state agency responsible for the licensing and regulation of horse and greyhound racing in Texas. Tex. Occ. Code § 2023.001(a). The Supreme Court has recognized that the State has an important "interest in preserving the

integrity of the sport and in protecting the public from harm." *Barchi*, 443 U.S. at 64. The presence of prohibited substances creates a risk for both the horses being drugged and to the betting public who will be harmed by tainted results.

Mr. Keeton was summarily suspended because 24 samples from horses he trained tested positive for prohibited substances. C.R. 727-750. The Commission received notice of the positive results because the testing laboratories sent a one-page document indicating, among other information, the horse, sample number, result of the test, substance found, and general testing method. *Id.* This is not all the information needed. The testing laboratories must provide a complete laboratory packet for each sample tested, which includes much more in-depth information. The Commission has been communicating with UC Davis in a diligent effort to obtain the laboratory packets for all samples tested. Despite the Commission's efforts, UC Davis was slow in providing the packets, sending over a few at a time until finally all packets were received by the Commission. In the same vein, the Commission could not provide the laboratory packets to Mr. Keeton until the Commission had the packets to share. Both the Commission and Mr. Keeton would have

been hamstrung in a merits hearing without the laboratory packets.

The need for the laboratory packets is directly related to the governmental interest because the Commission needs to ensure that the fact finders can decide based on all information. The Commission's interest in ensuring it holds trainers' doping horses accountable and enforces its rules appropriately.

The merits hearing could not be set until the Commission received complete laboratory packets, which are necessary for both parties to present a full case. The delay is justified, and this factor weighs in favor of no due process violation.

## C. The likelihood that the interim decision may have been mistaken.

The third factor, the likelihood that the interim decision may have been mistaken, weighs in favor of the Commission. The Supreme Court has found that "[a]t the interim suspension stage, an expert's affirmance, although untested and not beyond error, would appear sufficiently reliable to satisfy constitutional requirements." *Barchi*, 443 U.S. at 65.

UC Davis Equine Analytical Chemistry Laboratory is A2LA accredited and ISO/ IEC 17025 accredited. C.R. 727-749. Of the 23 tests conducted at UC David, 21 of the test result pages are signed by Dr. Ben

Moeller, Associate Professor at the UC Davis laboratory. C.R. 727- 749. Each page has a certification stating: "the confirmatory data supporting this report was reviewed for accuracy by two separate Certifying Reviewers/ Certifying Scientists." *Id.* The split sample test result from Industrial Laboratories is a confirmation of positive results, meaning that the primary sample tested by UC Davis and the split sample tested by Industrial Laboratories both tested positive.[3] C.R. 728, 750. The split sample test was signed by Senior Chemist Timothy Krueger. C.R. 750. The fact that 24 separate tests were positive for prohibited substances, combined with the fact that the laboratories conducting the tests are accredited to test for prohibited substances, and that the reports are all verified, makes the likelihood of mistake low. As a result, this factor weighs in favor of the delay being just.

Of the three factors the Court considers in determining whether a delay of a merits hearing violates due process, only one factor weighs slightly in favor of the delay being unjust. The other two factors clearly weigh in favor of the delay being just. As such, the delay in the merits

---

[3] The result at C.R. 750 is the result of a split sample test for the original positive test at C.R. 728.

hearing is just and does not violate Mr. Keeton's due process rights.

## II. Mr. Keeton's second claim fails because 42 U.S.C. 1983 claims against the state are barred by sovereign immunity and Mr. Keeton's due process rights have not been violated.

Mr. Keeton claims that the Commission's failure to set a hearing on the merits has deprived him of his property interest in his trainer's license without due process and attempts to bring a 1983 claim against the Commission. C.R. 16-17.

42 U.S.C. § 1983 "creates a remedy for violations of federal rights committed by persons acting under color of state law." *Howlett v. Rose*, 496 U.S. 356, 358 (1990). In bringing a claim under § 1983, the Plaintiff must show (1) they have a federal right that has been violated, (2) the person accused of violating the Plaintiff's federal right was acting under color of state law, and (3) the court has jurisdiction to hear the claim. *Id.* at 357.

Mr. Keeton's federal due process right has not been violated. As discussed above in section I, a delay in setting a post-deprivation merits hearing does not violate the due process clause so long as the state has a valid justification for the delay, which is determined by a three-factor balancing test. As analyzed above, while the first factor weighs slightly

in Mr. Keeton's favor, the second and third factors weigh in favor of the Commission. The balancing test indicates that the delay in the merits hearing did not violate Mr. Keeton's due process rights. Thus, Mr. Keeton has failed to establish a federal right that has been violated.

As to the second and third factors necessary to bring a § 1983 claim, while there is no argument that the Commission was acting under color of state law, the Court lacks jurisdiction to hear this claim.

It is well recognized that "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court." *Howlett*, 496 U.S. at 365. "A trial court without jurisdiction cannot order relief, even temporarily." *In re State*, 682 S.W.3d 890, 893 (Tex. 2023); *see also In re Abbott*, 601 S.W.3d 802, 805 (Tex. 2020). Mr. Keeton's attempt to bring a § 1983 claim against the State cannot stand because such a claim against the Commission is barred by sovereign immunity, which deprives the court of subject matter jurisdiction. Without jurisdiction, the court cannot grant relief of any type, monetary or equitable. Thus, Mr. Keeton's claim fails.

## III. Mr. Keeton's third claim fails because the Commission complied with statute in selecting and sending samples to

**UC Davis.**

Mr. Keeton claims the Commission acted in excess of its statutory authority by sending samples to UC Davis for testing in violation of Texas Occupations Code section 2034.002 and thereafter taking disciplinary action under 16 Texas Administrative Code sections 307.62(i), 319.3, and 319.304. C.R. 17-20.

## A. The Commission's actions were within its statutory authority.

The Commission is statutorily required to mandate testing to determine the presence of prohibited substances. Tex. Occ. Code § 2034.001(b). The statutory procedures for such testing are found in section 2034.002.

Texas Occupations Code section 2034.002(a) states:

(a) Medication or drug testing performed on a race animal under this subtitle must be conducted by:
  (1) the Texas A&M Veterinary Medical Diagnostic Laboratory; or
  (2)  a laboratory operated by or in conjunction with or by a private or public agency selected by the commission after consultation with Texas A&M Veterinary Medical Diagnostic Laboratory.

Tex. Occ. Code § 2034.002(a).

The statute mandates the Commission use Texas A&M for drug

testing samples from race animals or in the alterative, another lab if it is selected by the commission in consultation with Texas A&M. *Id.*

The Commission relied on Texas A&M for testing samples from race animals for several years until Texas A&M restructured its program. When Texas A&M restructured, it could no longer perform testing for the Commission. C.R. 557: 21-22. Texas A&M identified UC Davis as a laboratory capable of meeting the Commission's testing needs. Because the Commission and Texas A&M were already in a contract, Texas A&M subcontracted the testing to UC Davis. C.R. 935: 2-936:8. In an open meeting held on June 26, 2024, the Commission approved the interagency agreement with Texas A&M whereby testing would be subcontracted to UC Davis. C.R. 939:24-940:22.

Even if the Court were to find that sending samples to UC Davis prior to the Commission's approval of the interagency agreement on June 26, 2024, were in violation of Texas Occupations Code 2034.001(b), all of the samples at issue in this case were taken after the Commission's approval of the agreement. C.R. 727-750. Of the samples underlying this case, the earliest was collected on September 14, 2024, nearly three months after UC Davis was appropriately selected by the Commission in

consultation with Texas A&M.

Whether Texas A&M initiated the agreement with UC Davis, or the Commission initiated the agreement with UC Davis is irrelevant. At the time the samples at issue in this case were taken, the Commission had selected UC Davis as its testing lab and had done so in consultation with Texas A&M as required by statute.

Thus, it did not act in excess of its statutory authority, and the Commission properly relied on the positive results from UC Davis as a basis for Mr. Keeton's summary suspension. Because the Commission acted within its statutory authority, Mr. Keeton's claim fails and does not waive sovereign immunity.

**B. The Commission did not act in excess of its statutory authority when it took disciplinary action under 16 Texas Administrative Code sections 307.62(i), 319.3, and 319.304.**

The basis of Mr. Keeton's claim that the Commission acted in excess of its statutory authority when it took disciplinary action under 16 Texas Administrative Code sections 307.62(i), 319.3, and 319.304, is predicated on his argument that the Commission violated Texas Occupations Code 2034.002(a), its statutory authority, by sending samples to UC Davis. C.R. 19-20.

As discussed above in section IIIA, the Commission complied with statute in selecting UC Davis and thus did not act in excess of its statutory authority by sending samples to UC Davis.

Because the testing conducted by UC Davis was permissible and the results all indicated the presence of a prohibited substance, the Commission was authorized to take disciplinary action against Mr. Keeton and this claim fails to waive the Commission's sovereign immunity.

## IV. Mr. Keeton's fourth claim fails because the Commission complied with statute and agency rules.

Mr. Keeton claims the Commission acted in excess of its statutory authority by not sending split samples to Mr. Keeton's laboratory of choice for testing. C.R. 20-22.

Texas Occupations Code section 2034.005(c) provides "[a] license holder whose animal test shows the presence of a prohibited substance is entitled to have a split portion of the test sample or specimen tested at a testing facility authorized to perform drug testing under this subtitle and selected by the license holder. The commission shall adopt rules relating to split testing procedures." Tex. Occ. Code § 2034.005(c).

The Commission adopted rules related to split testing procedures

in 16 Texas Administrative Code section 319.362. Of utmost importance here is subsection (c) which states "[a]n owner or trainer of a horse which has received a positive result on a drug test may request, in writing, that the retained serum or urine, whichever provided the positive result, be submitted for testing to a Commission approved and listed laboratory that is acceptable to the owner or trainer. The owner or trainer must notify the executive secretary of the request not later than 48 hours after notice of the positive result. Failure to request the split within the prescribed time period will be deemed a waiver of the right to the split specimen." 16 Tex. Admin. Code § 319.362(c) (2024).

If an owner or trainer does not request split testing within 48 hours after notice of the positive result, then the right to the split has been waived, and the remaining subsections (a), (b), (d)-(g) are irrelevant.

In this case, Mr. Keeton received actual notice of the positive test results on January 30, 2025, when he was summarily suspended. C.R. 29. Mr. Keeton did not request split testing until February 3, 2025, when his attorney emailed the Commission General Counsel. C.R. 254. Mr. Keeton waived his right to split testing because his request came more than 48 hours after notice. Furthermore, Mr. Keeton did not send his

request to the executive secretary.

The Commission acted within its statutory authority by adopting rules for procedures for split testing. Tex. Occ. Code § 2034.001. The rules allow for 48 hours to request split testing. 16 Tex. Admin. Code §§ 319.362(b) (2025); 319.362(c) (2024). Mr. Keeton exceeded that. C.R. 29, 254. Therefore, in accordance with their rule, the Commission considered his right to the splits waived.

The Commission did not act outside of its statutory authority by not sending split samples to Mr. Keeton's laboratory of choice for testing because Mr. Keeton waived his right to the splits.

## V. Mr. Keeton's fifth claim fails because he lacks standing.

Mr. Keeton claims the Commission violated his due process rights by promulgating an updated version of 16 Texas Administrative Code section 319.362, which changed the procedure for handling split sample testing.[4] C.R. 22-26. Importantly, the updated version of 16 Texas Administrative Code section 319.362 went into effect on February 5, 2025, after Mr. Keeton had been summarily suspended and after the 48

---

[4] The version of 16 Texas Administrative Code section 319.362 that was in effect when Mr. Keeton was summarily suspended will be referred to as "319.362 (2024)." The version of 16 Texas Administrative Code section 319.362 that went into effect on February 5, 2025, will be referred to as "319.362 (2025)."

hours for Mr. Keeton to request split testing had run.

Section 319.362 (2024) required the Commission to keep split samples in its custody and store them appropriately for potential future testing, to ship split samples to the laboratory of the trainer or owners choosing if split sample testing was properly requested and allowed the trainer or owner to be present when the split sample was shipped for testing. However, just like section 319.362 (2025), section 319.362 (2024) provides 48 hours for an owner or trainer to notify the executive secretary of the request for split testing. In both versions of the rule, failing to request split testing within 48 hours after notice of a positive result constitutes a waiver of the right to split testing.

As explained above in section IV, Mr. Keeton did not request split testing within the 48-hour period after he was notified of the positive results, and as such, he waived his right to split sample testing. Regardless of which version of 319.362 is considered, the remaining subsections do not apply to Mr. Keeton because he has no right to split testing. There is no due process violation if an agency fails to provide process that is not due. As a result, Mr. Keeton has failed to establish a viable constitutional claim, so there is no waiver of the Commission's

sovereign immunity, and the court lacks subject matter jurisdiction.

The relief sought by Mr. Keeton in this claim is also barred by sovereign immunity. Mr. Keeton seeks declaratory relief that the amendments made to section 319.362 (2025) are either inapplicable or invalid.

"[T]he often future-looking nature of UDJA suits does not remove the requirement that the court must have subject matter jurisdiction over the suit—that is, that the parties must have standing, and a ripe, justiciable controversy must exist." *Southwestern Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020). To establish standing, a party "must show: (1) an injury in fact that is both concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Data Foundry, Inc. v. City of Austin*, 620 S.W.3d 692, 696 (Tex. 2021); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

Mr. Keeton does not meet any of the three standing requirements. Because Mr. Keeton waived his right to split testing, the changes to the

rule he complains of do not impact him, making his injury, in fact, hypothetical. The injury Mr. Keeton complains of is that he did not receive all due process he could have received under section 319.362 (2024). Because Mr. Keeton waived his right to split testing, the procedures for processing the splits do not apply. It was Mr. Keeton's action that caused the injury he complains of, not the Commission's action. Lastly, the injury is not redressable. Mr. Keeton is asking the court to declare that the amendments made to section 319.362 are inapplicable or invalid. C.R. 25 at 147-48. Even if the Court were to declare that the amendments made to section 319.362 do not apply to Mr. Keeton or are invalid, that would not change the outcome. Under both the 2024 and 2025 versions of section 319.362, the right to split testing is waived if it is not requested by the owner or trainer within 48 hours after notice of a positive result.

Because the 48-hour requirement is the same in both the 2024 and 2025 rule, even if this Court were to declare the changes made to rule 319.362 inapplicable to Mr. Keeton or invalid, it would not redress Mr. Keeton's complaint. As a result, Mr. Keeton lacks standing to bring this claim, and there is no waiver of sovereign immunity.

## CONCLUSION & PRAYER

Appellant, Texas Racing Commission, respectfully requests the Court to reverse the district court's Final Judgment denying the Commission's Amended Plea to the Jurisdiction because Mr. Keeton has failed to identify a valid waiver of sovereign immunity that would confer subject matter jurisdiction on the court.

Appellant requests such other and further relief to which they may be justly entitled.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

*/s/ Lauren McGee*
LAUREN MCGEE
State Bar No. 24128835
Assistant Attorney General
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-3203
Lauren.McGee@oag.texas.gov

ATTORNEY FOR APPELLANT TEXAS RACING COMMISSION

# CERTIFICATE OF COMPLIANCE

I certify that the submitted brief complies with Rule 9 of the Texas Rules of Appellate Procedure and the word count of this document is 4,9874. The word processing software used to prepare this filing and calculate the word count of the document is Microsoft Word for Office 365.

Date: December 12, 2025.

/s/ Lauren McGee
LAUREN MCGEE
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2025, a true and correct copy of the above and foregoing document has been served to the following party of record via electronic service and/or electronic mail:

Joseph C. DeAngelis, pro hac vice
Clark O. Brewster
State Bar No. 786841
Brewster & DeAngelis, PLLC
2617 E. 21st Street
Tulsa, OK 74114

Don Griffin, Jr.
State Bar No. 08456975
Vinson & Elkins, LLP
845 Texas St., Ste 4700
Houston, Texas 77002-2946

*Attorneys for Appellee*

/s/ Lauren McGee
LAUREN MCGEE
Assistant Attorney General

# INDEX OF APPENDICES

Final Order from SOAH hearing, adopted by the Commission on October 8, 2025 ....................................................................................... A



**TEXAS RACING COMMISSION**
1801 N. Congress Ave., Ste. 7.600
Austin, TX 78701-1320
(512) 833-6699

SOAH No. 476-25-13726
Ruling No. LSP Ruling 32350 SUPP 2

| TEXAS RACING COMMISSION | § | |
| | § | BEFORE THE |
| | § | |
| V. | § | |
| | § | |
| | § | TEXAS RACING COMMISSION |
| TOBY KEETON | § | |

## ORDER OF THE COMMISSION

On October 8, 2025, the Texas Racing Commission ("Commission") considered in open meeting the appeal of Toby Keeton ("Petitioner"), trainer/owner license number 3056, from Stewards' Ruling LSP 32350 SUPP 2 ("the ruling"). The Commission hereby makes the following findings based on the record of this matter:

On January 30, 2025, the Commission's Stewards summarily suspended Mr. Toby Keeton's trainer license as a result of twenty-three positives for Carmoterol and d-Methamphetamine found on racehorses trained by him.

On February 3, 2025, Steward Anne Alley scheduled the summary suspension hearing for February 11, 2024.

On February 12, 2025, the Board of Stewards issued a ruling affirming the summary suspension (Ruling LSP 32350 SUPP 2).

On February 15, 2025, Mr. Keeton appealed the Stewards' ruling, and the case was referred to the State Office of Administrative Hearings (SOAH).

On May 13, 2025, Texas Racing Commission Staff sent Appellant the Notice of Hearing. The Notice of Hearing contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and either a short, plain statement of the factual matters asserted or an attachment that incorporated by reference the factual matters asserted in the complaint or petition filed with the state agency.

On May 22, 2025, Administrative Law Judge Roshunda Atchison convened the hearing on the merits via Zoom. Attorneys David Holmes and Diego Olivares represented Commission Staff. Attorneys Clark Brewster and Joseph DeAngelis represented Appellant.

The record was held open to allow the parties to file written closing arguments and file admitted exhibits. It was closed on June 6, 2025.

On August 6, 2025, Administrative Law Judge Roshunda Atchison issued a proposal for decision, incorporated by reference to this order, in which she found the Board of Stewards' ruling was not clearly in error as to the summary suspension of Mr. Keeton's license.

IT IS HEREBY ORDERED that Board of Stewards' ruling LSP 32350 SUPP 2 is upheld in full.

This order takes effect on the date it is entered. If an order of a court restrains the enforcement of this order, this order takes effect upon a final determination by that court or an appellate court in favor of the Texas Racing Commission.

ISSUED AND ENTERED THE 8TH DAY OF OCTOBER 2025.


_____
Robert C. Pate, Chair

_____
Connie McNabb, DVM, Vice Chair


_____
Susan Maldonado for Sid Miller

_____
Rebecca Contreras

_____
Steven Mach

_____
Margaret Martin

_____
Michael Moore

_____
Arvel Waight Jr.

STATE OFFICE OF ADMINISTRATIVE HEARINGS RECEIVED ON 8/6/2025 11:12 AM

FILED
476-25-13726
8/6/2025 11:12 AM
STATE OFFICE OF
ADMINISTRATIVE HEARINGS
Amy  Robles, CLERK

ACCEPTED
476-25-13726
8/6/2025 11:20:16 am
STATE OFFICE OF
ADMINISTRATIVE HEARINGS
Amy  Robles, CLERK

# State Office of Administrative Hearings

Kristofer S. Monson
Chief Administrative Law Judge

August 6, 2025

David Holmes                                          **VIA EFILE TEXAS**
Attorney for Texas Racing Commission

Clark Brewster                                        **VIA EFILE TEXAS**
Joseph DeAngelis
Attorneys for Toby Keeton

    **RE:   SOAH Docket Number 476-25-13726.TRC;** *Toby Keeton v. Texas Racing Commission*

Dear Parties:

Please find attached a Proposal for Decision in this case.

Exceptions and replies may be filed by any party in accordance with 1 Texas Administrative Code section 155.507(b), a SOAH rule which may be found at www.soah.texas.gov.

CC: Service List

P.O. Box 13025 Austin, Texas 78711-3025 | 300 W. 15th Street Austin, Texas 78701
Phone: 512-475-4993 | www.soah.texas.gov

Copy from re:SearchTX

# TABLE OF CONTENTS

I.   Notice, Jurisdiction, and Procedural History ........................................3

II.  Applicable Law ...................................................................................3

III. Evidence ..............................................................................................7

    A.   Background................................................................................8

    B.   Stewards' Hearing Evidence ....................................................8

        1.   Testimony of Dr. Jesse Phillips....................................9

        2.   Testimony of Investigator Thomas Huckaby ................ 11

        3.   Testimony of Aaron Grigsby ....................................... 12

    C.   SOAH Appeal Hearing Evidence ........................................... 16

        1.   Testimony of Amy Cook .............................................. 16

        2.   Testimony of Aaron Grigsby ....................................... 18

VI. Analysis ............................................................................................ 21

    A.   It Was Not Clear Error to Consider The Test Results. ........... 21

    B.   It Was Not Clear Error to Rely On The Chain of Custody....... 23

    C.   It Was Not Clear Error To Consider The Test Results From UC-Davis. ...................................................................................... 24

    D.   The Stewards Did Not Err in Issuing a Ruling Absent Split-Sample Analysis on All Samples .......................................... 25

    E.   It Was Not Clear Error To Designate Appellant As The Absolute Insurer Of Horses that Tested Positive. ................................. 26

    F.   The Stewards Did Not Clearly Err By Upholding the Summary Suspension Pending a Hearing On the Merits. ......................... 27

VII.   Findings of Fact ............................................................................... 28

VIII.   Conclusions of Law......................................................................... 31

Copy from re:SearchTX

# BEFORE THE
# STATE OFFICE OF ADMINISTRATIVE HEARINGS

---

**TOBY KEETON,**
**APPELLANT**
**v.**
**TEXAS RACING COMMISSION,**
**APPELLEE**

## PROPOSAL FOR DECISION

Toby Keeton (Appellant) appealed the Sam Houston Park Board of Stewards' (Stewards') ruling (LSP 32350) affirming the summary suspension issued by the Texas Racing Commission (Commission). The Stewards declined to lift the summary suspension pending a hearing on the merits. Further, Appellant is denied access to all areas under the jurisdiction of the Commission. After considering the evidence and applicable law, the Administrative Law Judge (ALJ) finds that the Stewards' ruling should be upheld.

Copy from re:SearchTX

# I.  NOTICE, JURISDICTION, AND PROCEDURAL HISTORY

There were no contested issues of notice or jurisdiction. Those issues are set forth in the Findings of Fact and Conclusion of Law below.  On May 22, 2025, ALJ Roshunda Atchison with the State Office of Administrative Hearings (SOAH) convened the hearing by videoconference. Attorney David Holmes represented the Commission. Attorneys Clark Brewster and Joseph DeAngelis represented Appellant. The hearing concluded that day, but the record was held open to allow the parties to file written closing arguments and file admitted exhibits. The record closed on June 6, 2025.

# II.  APPLICABLE LAW

Horse racing in Texas is governed by the Texas Racing Act (Act)[1] and the rules promulgated by the Commission pursuant to the Act.[2] The Commission has adopted rules providing that a horse participating in a race "may not carry in its body a prohibited drug, chemical, or other substance,"[3] and requiring a trainer to "guard each animal in his or her custody before the animal races in the manner and for the time necessary to prevent the administration of a prohibited drug, chemical or other substance."[4]

---

[1] Tex. Occ. Code chs. 2021-2035.

[2] Tex. Occ. Code §§ 2023.003-.004.

[3] 16 Tex. Admin. Code § 319.3(a).

[4] 16 Tex. Admin. Code § 319.302.

Copy from re:SearchTX

"Prohibited substance" means a drug, chemical, or other substance that in use or in intended use, is reasonably capable of influencing or affecting the outcome of a race, and is prohibited by rule regulating the unlawful influence of a race.[5] By rule, "prohibited drugs, chemicals, or other substances" means: any stimulants, depressants, tranquilizers, local anesthetics, drugs, other drug metabolites which could affect the health or performance of a race animal, however minimal, except as expressly permitted."[6]

The Commission's rules also regard trainers as the "absolute insurer" of any horse entered into a race and require them to ensure that each horse in the care and custody of the trainer is "free from all prohibited drugs, chemicals, or other substances."[7] Further, the trainer is responsible for ensuring that no prohibited substance is administered to the animal.[8]

After a race, a specimen must be collected from the horse that finished first, and a specimen may be collected from the horse that finished second, in a test barn at the racetrack.[9] A positive finding by a chemist of a prohibited drug, chemical, or other substance in a test specimen of a horse collected on the day of a race, "subject to the rules of the Commission relating to split-specimens, is prima facie evidence

---

[5] Tex. Occ. Code § 2021.003(38).

[6] 16 Tex. Admin. Code § 319.1(b)(1).

[7] 16 Tex. Admin. Code § 311.104(b)(2).

[8] Tex. Occ. Code § 2034.004(2).

[9] 16 Tex. Admin. Code § 319.361(b), (c)(1).

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

that the prohibited drug, chemical, or other substance was administered to the animal and was carried in the body of the animal while participating in a race."[10] Beta-agonists are prohibited substances and shall not be administered to a horse participating in racing at any time.[11]

If the stewards or racing judges determine that a licensee's actions constitute an immediate danger to the public health, safety, or welfare, the stewards or racing judges may enter a ruling summarily suspending the license, without a prior hearing. A summary suspension takes effect immediately on issuance of the ruling. If the stewards or racing judges suspend a license under this subsection, the licensee is entitled to a hearing on the suspension not later than seven calendar days after the day the license is suspended.[12]

The Act provides for a board of three stewards at each racetrack to supervise horse races.[13] Stewards are authorized to interpret and enforce the Act and its rules and to issue rulings.[14] Stewards also have the authority to investigate alleged violations of the Act or rules by a licensee, charge a licensee with a violation, conduct disciplinary hearings, and impose fines and suspend licenses.[15]

---

[10] 16 Tex. Admin. Code § 319.3(e).

[11] 16 Tex. Admin. Code § 319.3(f).

[12] 16 Tex. Admin. Code § 307.62.

[13] Tex. Occ. Code § 2023.101(a).

[14] 16 Tex. Admin Code § 313.22(b).

[15] 16 Tex. Admin. Code § 307.61(a).

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

A person aggrieved by a ruling of the stewards may appeal to the Commission, and those appeals are referred to SOAH for hearing.[16] In an appeal, the petitioner has the burden of proving that the Stewards' ruling was clearly erroneous.[17] In applying a clear error standard of review, the ALJ must review all of the evidence in the light most favorable to the ruling and then determine if the ruling was clearly erroneous. If, after reviewing all the evidence, the ALJ cannot say that the ruling was clearly erroneous, the ALJ must recommend that the Commission uphold the ruling even if the ALJ would have weighed the evidence differently had the ALJ been sitting as the trier of fact.[18]

---

[16] 16 Tex. Admin. Code § 307.67.

[17] 16 Tex. Admin. Code § 307.67(c).

[18] *Lopez v. State*, 940 S.W.2d 388, 390 (Tex. App.—Austin 1997, pet. ref'd) (describing the clear error standard in the context of a *Batson* challenge for a juror); *see Hernandez v. New York*, 500 U.S. 352, 369 (1991); *Hunter v. Underwood*, 471 U.S. 222, 229-30 (1985) (agreeing with court of appeals' application of the clearly-erroneous standard when it was "left with a firm and definite impression of error.").

Copy from re:SearchTX

## III. EVIDENCE

At the SOAH hearing, Appellant offered twenty exhibits of which sixteen exhibits were admitted into evidence.[19] Appellant also solicited witness testimony from the Executive Director Amy Cook and Deputy Executive Director Aaron Grigsby. Staff had eighteen exhibits admitted into evidence[20] and presented no witness testimony.

---

[19] Appellant's exhibits consist of the following: SOAH Demo (Exhibit 1), Email with TXRC Counsel re: Hearing (Exhibit 2), Jan. 30, 2025 Notice (Exhibit 3), Feb. 2, 2025 Notice with Metadata (Exhibit 5), Email Requesting Splits (Exhibit 6), Race Chart – 10/4/24 Race 7 (Exhibit 7), Dynamo Corporate Registration Documents and Public Records (Exhibit 8), TPIA Request/Response – Department of Public Safety (Exhibit 9), Email – Grigsby (Cetirizine) (Exhibit 10), TPIA Request re: UC Davis (Exhibit 14), TPIA Response re: UC Davis (Exhibit 15), UC Davis Accreditation Certificate (Exhibit 16), Email 2024-9-3 Grigsby et al re: Subcontract (Exhibit 17), TXRC Meeting Transcript (6-26-24) (Exhibit 18), TXRC Meeting Transcript (8-8-24) (Exhibit 19), TXRC Meeting Agendas ( June 2024-December 2024) (Exhibit 20). The exhibits presented as offers of proof consist of Keeton Equibase Profile-Starts (Exhibit 4), UC-Davis EACL Submission Form (Exhibit 11), Email 2025-2-8 Moeller re: Key Individuals (Exhibit 12), and Example Lab Packet from UC Davis (Ky) (Exhibit 13).

[20] Commission's exhibits consist of the following: Series of communications between Mr. Brewster and Texas Racing Commission's General Counsel, Mr. David Holmes (Exhibit 1), Pro Hac Vice Motion submitted by Mr. Brewster and received by the Commission on February 10, 2025 (Exhibit 2), Presentation by Mr. Brewster on questions of law and facts. (Exhibit 3), Test Barn Chain of Custody Instructions (Exhibit 4), Compound isomers (Exhibit 5), Curriculum Vitae of Dr. Jesse Phillips (Exhibit 6); Ruling 32350 (LSP32350) January 30, 2025 (Exhibit 7), Ruling 32350 (LSP32350) Supplemental Ruling January 30, 2025 (Exhibit 8), Email request for a hearing on the validity of the summary suspension February 1, 2025 (Exhibit 9), Acknowledgment letter by Mr. David Holmes of the request for a hearing with attachments 10.1 and 10.2 (Exhibit 10), Keeton′s positive laboratory letters (Exhibit 11), Keeton's sample documents (Exhibit 12), SOAH Proposal of Decision- SOAH DOCKET NO. 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 TXRC N0. 2017-02-03, January 2, 2018 (Exhibit 13), Commission's order adopting SOAH Proposal of Decision-SOAH DOCKET NO. 47617-5681 October 29, 2019 (Exhibit 14), Final Summary Suspension Ruling (Exhibit 15), Transcript-Summary suspension hearing February 11, 2025 (Exhibit 16), Transcript-Texas Racing Commission meeting June 26, 2024 (Exhibit 17), and Interagency Agreement between Commission and Texas A&M Veterinary Medical Diagnostic Laboratory (Exhibit 18).

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

## A. BACKGROUND

Appellant is licensed by the Commission as an owner/trainer with license number 3056. On January 30, 2025, Appellant's license was summarily suspended by the Stewards after twenty-three horses trained by him had positive drug tests for Carmoterol and one horse tested positive for d-Methamphetamine.[21] A hearing on the summary suspension of Appellant's license was held. The following day, the Stewards issued a ruling affirming the summary suspension. The Stewards' ruling read, "[u]pon consideration of all of the evidence and testimony, the Board of Stewards respectfully decline to lift the summary suspension pending a hearing on the merits." Appellant appealed the Stewards' ruling, and the Commission referred the case to SOAH.

## B. STEWARDS' HEARING EVIDENCE

At the Stewards' summary suspension hearing, six exhibits were admitted for the Stewards' consideration, along with testimony from Dr. Jesse Phillips and Investigator Thomas Huckaby.[22] The Commission presented the testimony of

---

[21] Mr. Grigsby testified that Carmoterol was a novel drug that has not been approved by the Food and Drug Administration, nor was the drug available on the market, except for research purposes in the United States.

[22] Appellant's evidence submitted at the summary suspension consisted of the following: Series of communications between Mr. Brewster and Commission's General Counsel, Mr. David Holmes (Exhibit 1), Pro Hac Vice Motion, submitted by Mr. Brewster and received by the Commission on February 10, 2025 (Exhibit 2), Presentation by Mr. Brewster on questions of law and facts (Exhibit 3), Test Barn Chain of Custody Instructions (Exhibit 7), Compound isomers. (Exhibit 13), and Curriculum Vitae of Dr. Jesse Phillips. (Exhibit 16).

Copy from re:SearchTX

Deputy Executive Director Aaron Grigsby, and seven exhibits were admitted for the Stewards' consideration.[23]

## 1. Testimony of Dr. Jesse Phillips

Dr. Phillips testified as an expert in the general field of analytical chemistry. Dr. Phillips operates an analytical research and testing lab in Pryor, Oklahoma that is ISO 17025 accredited.[24] His duties include developing novel methods for detecting and distinguishing between analytical compounds.

Dr. Phillips reviewed the Compound Isomers[25] and testified that he observed several compounds, specifically Carmoterol hydrochloride and cetirizine oxide.[26] According to Dr. Phillips, several of the compounds had the same chemical and molecular formula as Carmoterol.[27] He explained that such compounds are known as isomers of one another.[28] Dr. Phillips further explained that there is a known risk

---

[23] The Commission's evidence submitted at the summary suspension consisted of the following; Ruling 32350 (LSP32350), January 30, 2025 (Exhibit A), Ruling 32350 (LSP32350) Supplemental Ruling, January 30, 2025 (Exhibit B), Email request for a hearing on the validity of the summary suspension, February 1, 2025 (Exhibit C) Acknowledgment letter by Mr. David Holmes of the request for a hearing with attachments 10.1 and 10.2 (Exhibit D) Keeton's positive laboratory letters (Exhibit E), Keeton's sample documents (Exhibit F), and SOAH Proposal of Decision, SOAH DOCKET NO. 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, TXRC N0. 2017-02-03, January 2, 2018 (Exhibit G)

[24] An ISO 17025 accredited laboratory is one that has been independently assessed and recognized for its technical competence in performing specific tests and calibrations.

[25] Commission Ex. 5.

[26] Commission Ex. 16 at pg. 56-58.

[27] Dr. Phillips identified Mitraphylline Uncarine C,  Uncarine E, Uncarine A, Uncarine B, Uncarine F, and Speciophylline as compounds having the same chemical and molecular formula as Carmoterol.

[28] An isomer is two or more compounds with the same formula but a different arrangement of atoms in the molecule and different properties.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

of misidentification when confronted with isomers. Dr. Phillips testified that the report noted that liquid chromatography mass spectrometry with enzymatic hydrolysis (LC-MS testing) was the type of analytical methodology used to identify Carmoterol. According to Dr. Phillips, there is a risk of misidentification between isomers with LC-MS testing. Dr. Phillips explained that some sort of orthogonal type testing method should have been used instead of using LC-MS testing to prevent summarization from occurring and to ensure correct identification.

Regarding the laboratory report, Dr. Phillips said that more documentation is needed to deem the laboratory reports acceptable.[29] In his opinion, more information is needed to support the conclusion that the method was reliable to detect Carmoterol. Based on the evidence noted in the laboratory report, Dr. Phillips stated that he could not confirm that a Carmoterol standard was used to confirm Carmoterol. According to Dr. Phillips, there is an inherent risk of confusing any compound that has any type of isomer because of unknowns, such as diffraction patterns and fragmentation patterns, which risked the misidentification of an isomer with another compound. Therefore, based on the laboratory report, he would not confirm to a degree of scientific certainty that the test performed is a positive test for Carmoterol.[30]

On cross-examination, Dr. Phillips acknowledged that he has never worked in racing medication testing. He further acknowledged that he was not familiar with

---

[29] Commission Ex. 11.

[30] Commission Ex. 16 at pg. 64.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

how positive drug results were handled in horse racing, only how ISO labs report results.[31] According to Dr. Phillips, based on the laboratory report he reviewed, he could not speak to whether the laboratory took measures to distinguish Carmoterol. However, he maintained that the laboratory report lacked necessary information.

## 2.      Testimony of Investigator Thomas Huckaby

Mr. Huckaby has been working as an investigator at the law firm of Brewster DeAngelis since July 2018. Mr. Huckaby testified that he was familiar with the chain of custody process in litigation matters. He reviewed the chain of custody documents provided by the Commission related to certain samples taken from horses trained by Appellant. In Mr. Huckaby's opinion, the documentation is devoid of the information necessary to make it a true chain of custody. According to Mr. Huckaby, the start of the chain of custody for the evidence is clear; however, the documentation shows no forwarding information about the chain or evidence.

Mr. Huckaby noted that none of the twenty-three samples had a clearly documented chain of custody. He said that the documents only showed that the samples were picked up by Dynamo Delivery, Inc.[32] Additionally, the owner of Dynamo, Ronnie L. Richardson, signed for some of the samples. According to Mr. Huckaby, online public records revealed that Dynamo forfeited its corporate status in August 2008, and has not been reinstated as a viable company since being

---

[31] Commission Ex. 16 at pg. 66.

[32] Commission Ex. 16 at pg. 80.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

suspended by the Texas Secretary of State.[33] Mr. Huckaby said that he performed a background check on Mr. Richardson and found that Mr. Richardson had a criminal history dating back to 1976, and he had federal and state tax liens filed against him.[34]

On cross-examination, Mr. Huckaby acknowledged that he had been investigated for falsifying documents at one time in his career. However, Mr. Huckaby denied ever being terminated as a police officer for misconduct. When asked whether he instructed the Appellant, during a recent interview, to withhold or destroy evidence, Mr. Huckaby responded that he only instructed the Appellant to put a lock on his phone because he did not believe the warrant served on the Appellant for his phone was a valid warrant. He explained that the warrant failed to identify an individual and did not specify any particular phone.

### 3. Testimony of Aaron Grigsby

Mr. Grigsby is the Deputy Executive Director for operations for the Commission. His duties consist of assisting the executive director with the oversight of operations, live racing operations, and overseeing the investigative groups. Mr. Grigsby testified that he was familiar with the sample documents, lab results, and letters showing positive tests for Carmoterol and d-Methamphetamine[35] pertaining

---

[33] Commission Ex. 16 at pg. 80.

[34] Commission Ex. 16 at pg. 81.

[35] The blood sample in racehorse Flyin Rabbit 123, collected on November 15, 2024, tested positive for d-Methamphetamine.

Copy from re:SearchTX

to Appellant's case.[36] Further, Mr. Grigsby said that a split-sample included in the lab results showed a positive result for Carmoterol.[37]

Regarding the chain of custody documents, Mr. Grigsby said that the documents were authentic and true copies of the originals kept in the regular course of the Commission's operations.[38] He explained that the documents were emailed to the Commission by the University of California at Davis (UC-Davis). Mr. Grigsby acknowledged that there were some discrepancies in the chain of custody documents. He explained that upon accession by the UC-Davis laboratory, it was noted that hair samples were in two envelope containers in close proximity to each other.[39]

According to Mr. Grigsby, the administration of Carmoterol poses an immediate danger to the integrity of horse racing because the drug is an ultra long-lasting beta-agonist, which is a performance-enhancing drug, particularly for quarter horses. He explained that beta-agonists have a bronchodilator effect that increases respiratory values and also have an anabolic effect with long-term training. In summary, the drug can affect the outcome of racing. In Mr. Grigsby's opinion,

---

[36] Commission Ex. 11 provides details regarding the positive drug test results, the date of testing, and detailed information on each horse tested between September 14, 2024, to November 15, 2024. Each horse is specifically identified in the Findings of Fact section of this decision.

[37] A split-specimen collected from Dashin Girlfriend on September 28, 2024, was tested at Industrial Laboratories. This entity confirmed the presence of Carmoterol in Dashin Girlfriend on the above-stated date.

[38] Commission Ex. 12.

[39] On cross-examination, Mr. Grigsby explained the discrepancy in samples noted by UC-Davis involved hair testing, which is not relevant to Petitioner's case. He further explained that none of the hair sampling identified in the discrepancy tested positive for Carmoterol.

Copy from re:SearchTX

allowing Appellant to continue training or racing horses during a protracted investigation poses a risk to the betting public, the integrity of racing, and the health of the horse. Further, continued use of the drug has the potential to financially impact race winnings, purse distribution, and wagering.[40] He believes that immediate action was necessary to protect the public, the horses, and the integrity of the sport. Mr. Grigsby said that the Commission was still building the criminal case against Appellant because the positives are still incoming for Carmoterol.

On cross-examination, Mr. Grigsby acknowledged talking with the Stewards; however, he explained that the conversations consisted of notifying the Stewards of the administrative case and the ongoing criminal investigation. Mr. Grigsby explained that the summary suspension packet pertaining to Appellant's case included the sample document chain, the positives from the lab, and an affidavit.

When questioned whether he had any knowledge of any actions that Appellant took that were a violation of the rules, Mr. Grigsby did not answer the question and informed Appellant's counsel that he would not discuss the criminal case or the contents of the execution of the search warrant.[41] Further, Mr. Grigsby refused to discuss or provide evidence of a criminal investigation in an administrative hearing. In his opinion, the scope of the hearing is solely a summary suspension hearing based on positive drug test results.[42]

---

[40] Commission Ex. 16 at pg. 102.

[41] Commission Ex. 16 at pg. 109.

[42] Commission Ex. 16 at pg. 111, line 5-8.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

Mr. Grigsby testified that the state of Texas has a test barn chain of custody manual to ensure the integrity of samples.[43] He acknowledged that there are deviations in the sample collection process, such as weather conditions. Regarding documentation of the chain of custody, Mr. Grigsby explained that the required information of the date and time a specimen is handled or transferred and the identification of each individual in the chain of custody only applies to a specific specimen and not the container holding the specimen as long as the container is sealed. He further explained that the Commission is not obligated to document the chain of custody once the specimens are sealed and leave the Commission's possession for delivery to the laboratory. In this case, the specimens were shipped through FedEx. Mr. Grigsby testified that the process of maintaining integrity for the chain of custody for these samples had been maintained. However, Mr. Grigsby would not acknowledge whether or not the test barn chain of custody manual had been followed regarding the specimens. In his opinion, the chain of custody documents shows UC-Davis successfully accessioned the samples without incident, meaning the seal remained intact, the temperatures remained viable, and an intact sample arrived at the laboratory.

Mr. Grigsby reviewed the chain of custody documentation and confirmed that the documents show equine samples that were pulled from the test barn crew and successfully attained by UC-Davis.[44] He was specifically questioned about split-

---

[43] Commission Ex. 4.

[44] Commission Ex. 12.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

samples and whether information regarding the samples was required to be presented for consideration by the Steward. In response, Mr. Grigsby said that evidence regarding split-samples is not required in the summary suspension hearing.

## C.    SOAH APPEAL HEARING EVIDENCE[45]

### 1.    Testimony of Amy Cook

Ms. Cook is the Executive Director of the Commission. As the Executive Director, she is familiar with the Commission's regulations and regularly makes decisions on behalf of the Commission's quorum for the administration of the Act and the rules. Ms. Cook's responsibilities include operating a laboratory for the Commission and approving racing officials, such as the Stewards. She also acknowledged that her duties consist of receiving split-sample requests; however, she explained that the requests are handled by the stewards and the investigators on her behalf.

Regarding notices of a positive test, Ms. Cook testified that the Commission receives daily sample reports from the laboratory indicating positives and negatives. According to Ms. Cook, the samples do not have the names of the licensees but are given a sample number. She explained that the reports reflect a trend of the number of positives and negatives received from the laboratory. Although she is aware of the forms used to notify trainers and has approved the test barn procedures and guidelines, Ms. Cook said that she is not involved in the notification process. She

---

[45] The documentary evidence admitted at the appeals hearing is addressed above.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

further explained that the notification form contains the date results were received from the laboratory and the date the race was held. Ms. Cook said that a follow-up letter from the laboratory provides more details, such as the type of drug detected in a specific sample that is then used to identify the horse and trainer involved. She testified that the name of the horse and licensee are anonymous at the time of testing; therefore, the laboratory has no knowledge of the licensee connected to the samples.[46]

Ms. Cook reviewed and testified to the Stewards' ruling. Ms. Cook acknowledged that she did not participate in the determination and preparation of the ruling. She acknowledged that a summary suspension ruling is not detailed because the matter is still at the Stewards' level. According to Ms. Cook, she does not review case documents. She said that she only reviews the final rulings and posts them on the agency's website. Ms. Cook testified that she assisted with creating the PDF for Adobe Sign on the supplemental ruling so that the ruling could be publicly posted for notification. In Appellant's case, the need for timely notification of the supplemental ruling was to ensure that the horses stabled at the track were cared for.

Ms. Cook testified regarding UC-Davis. Ms. Cook confirmed that the Commission held a special meeting on June 26, 2024, for the purpose of approving an interagency agreement with Texas A&M Veterinary Medical Diagnostic Laboratory (TVMDL) for the next fiscal year. Ms. Cook said that it was discussed

---

[46] On cross-examination, Ms. Cook confirmed that there was no requirement to include the names of horses on the notices to trainers or rulings by the Stewards.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

that UC-Davis was the only available laboratory that met the needs of the Commission; therefore, TVMDL was advised that UC-Davis was the preferred laboratory of the Commission.[47] As it relates to Appellant and the special meeting held on June 26, 2024, Ms. Cook further explained that the purpose of the meeting was to add a definition for the word "provide" because it was not in the previous agreement. Since the statute requires TVMDL to perform testing, with the addition of the added word, TVMDL could either perform the drug testing directly or through a subcontractor while still maintaining oversight of the process.

## 2. Testimony of Aaron Grigsby

At the appeals hearing, Mr. Grigsby's testimony was mostly consistent with the testimony he provided at the summary suspension hearing before the Stewards. He maintained that the Commission acted in good faith and with due diligence to generate the lab packets as fast as possible, considering the prolific amount of drug use by Appellant in the racing industry. Mr. Grigsby acknowledged that the full data packets were not provided for the summary suspension hearing, only the initial confirmation letters.[48] Mr. Grigsby confirmed that the letter from the UC-Davis lab was the only documentary evidence presented to the Stewards establishing the presence of Carmoterol and/or d-methamphetamine in Appellant's horses.

---

[47] On cross-examination, Ms. Cook explained that UC-Davis was the only laboratory with the ability to potentially handle 18,000 horse samples per year. Additionally, the testing laboratory is required to meet the statutory requirements under the Act, such as the educational and public institution requirements.

[48] Mr. Grigsby testified that the full data packets were received after the summary suspension hearing.

Copy from re:SearchTX

Regarding additional evidence pertaining to Appellant's conduct, Mr. Grigsby refused to provide any evidence and would not confirm whether there was evidence that Appellant obtained or possessed the drug. However, he did acknowledge that there was evidence related to the administration of the drug by Appellant and potentially by a veterinarian.

Mr. Grigsby added that he is not physically involved in the test barn sample collection process and does not recall being present for samples collected regarding Appellant's case. He expounded on the sample collection process and explained that specimens are collected and logged by the technician and supervising test barn technician at collection. Afterwards, samples are refrigerated and secured in the test barn area. He further explained that samples are sealed in a triplicate-sealing process before being shipped. Individuals assigned to collect the initial samples are noted on collection cards. As stated by Mr. Grigsby, the split-samples are taken from the primary initial collection.

According to Mr. Grigsby, once the collections are received at the laboratory, documentation contains a signature and a checkmark verifying that all samples were intact and none of the samples were found to be broken, damaged, or out of temperature controls. He further explained that if there were discrepancies with samples, the Commission would receive photographs of the container and correspondence from the laboratory describing the discrepancy discovered by the laboratory.

Copy from re:SearchTX

When questioned regarding courier services, Mr. Grigsby said that the Commission does not veterinary courier services who deliver samples to TVMDL. He acknowledged that Dynamo was a courier service used to deliver samples. Mr. Grigsby said that once containers are given to Dynamo, the container of samples is out of the Commission's custody. When questioned on Dynamo's status as a defunct business, Mr. Grigsby said that he was unable to verify whether the business's name had been transferred to a different business name.

On cross-examination, Mr. Grigsby acknowledged that only one split-sample was done on one of the initial positive results. He explained that only one split-sample was done because the Commission did not fully conceptualize the wave of positives that would be received or the total impact to the industry and community with one positive. As a result of the wave of positives, a criminal investigation was initiated. According to Mr. Grigsby, the prosecutors elected to hold the split-samples for the criminal defense team as opposed to the administrative defense team in this case.

Mr. Grigsby expounded on his testimony regarding beta-agonists. Mr. Grigsby said that the Commission rules prohibit all beta-agonists because of the abuse value and its performance-enhancing value. Mr. Grigsby further explained that Rule 319.1 defines prohibited drugs, chemicals, or other substances. According to Mr. Grigsby, Carmoterol falls into the definition of prohibited substance as stated in the rules of racing.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

## VI.  ANALYSIS

Appellant has the burden to prove that the Stewards clearly erred by upholding the summary suspension of Appellant's license pending a hearing on the merits. This case is unique in that it is an appeal from a Stewards' ruling and not an appeal from a hearing on the merits. This is not a *de novo* appeal in which the ALJ cannot decide the matter in the first instance. Appellant is entitled to relief from the Stewards' ruling only if Appellant can show that the ruling was clearly erroneous.

Appellants raises various arguments contesting the validity of the evidence, asserting (1) the positive test letters and certificate of analysis were uncorroborated hearsay; (2) the evidence failed to authenticate the chain of custody for the samples; (3) the positive test results were obtained from an unauthorized lab (UC-Davis); (4) issues surrounding split-sample analysis were unresolved prior to the Stewards' ruling; (5) the many positive test results were not proof of Appellant's actions, and (6) imposing an "indefinite" suspension on a lesser burden violated Appellant's procedural protections under the statute.

Because Appellants have not shown that the Stewards clearly erred, the ALJ recommends upholding their decision.

### A.  IT WAS NOT CLEAR ERROR TO CONSIDER THE TEST RESULTS.

Appellant asserted that the Stewards' ruling was supported solely by uncorroborated and inadmissible hearsay and should not have been considered by the Stewards. In this regard, Appellant asks the ALJ to reweigh the evidence to address

Copy from re:SearchTX

the issue of inadmissible hearsay, which the ALJ cannot do. By law, the Stewards "shall allow a full presentation of evidence and are not bound by the technical rules of evidence" in a hearing.[49] Since the technical rules of evidence do not apply to the Stewards' hearing, technical evidentiary arguments are not enough to prevail; they do not show clear error.[50]

Additionally, under 16 Texas Administrative Code section 307(d)(4), the Stewards may admit hearsay evidence if the Stewards determine the evidence is of a type that is commonly relied on by reasonably prudent people and the hearsay was not the sole basis for the ruling. Scientific lab results are the type of information relied upon by reasonably prudent people. And based on the parties' written arguments, it is undisputed that the lab results were not the sole evidence considered by the Stewards. Here, in reaching their ruling, the Stewards considered the positive test letters, along with a split-sample confirmation that similarly showed a positive test and testimony from Mr. Grigsby. Petitioner did not establish clear error on this ground.

---

[49] 16 Tex. Admin. Code § 307.62(d)(4).

[50] *Cf. Los Fresnos Consol. Indep. Sch. Dist. v. Vazquez*, 481 S.W.3d 742, 746 (Tex. App.—Austin 2015, pet. denied) (explaining that hearsay could be considered in a school district's nonrenewal hearing because the hearing procedures did not include the Texas Rules of Evidence).

Copy from re:SearchTX

## B.    IT WAS NOT CLEAR ERROR TO RELY ON THE CHAIN OF CUSTODY.

Second, Appellant asserted that the Commission failed to sufficiently prove the reliability of the lab test results without the full record of the chain of custody. Yet, there was sufficient evidence of reliability here.

At the summary suspension hearing, Mr. Grigsby testified extensively about the chain of custody records. Although Mr. Grigsby could not personally attest to the condition, collection, sealing, and shipping of these samples since he was not physically involved with processing them, he testified about the Commission's practice, customs, habits, and the chain of custody documentation received from UC-Davis—showing sufficient authentication of the chain of custody and why relying on the test results was reasonable. That evidence is enough here, where no error was shown with respect to these particular test results.

In his testimony before the Stewards, Mr. Grigsby acknowledged some discrepancies in the chain of custody documents; however, he explained that those discrepancies in the samples noted by UC-Davis involved hair testing, which is not relevant to Appellant's case and the samples did not test positive for Carmoterol. Outside of the discrepancies mentioned, the evidence considered by the Stewards did not establish that there were flaws or any irregularities related to the chain of custody, calling questions to the integrity of the samples. Mr. Grigsby's testimony at the hearing before SOAH was consistent with his testimony provided at the Stewards' hearing. The Stewards' reliance on the chain of custody documentation accompanied by Mr. Grigsby's testimony was not clear error.

Copy from re:SearchTX

## C. IT WAS NOT CLEAR ERROR TO CONSIDER THE TEST RESULTS FROM UC-DAVIS.

Next, Appellant asserted that reliance on test results from UC-Davis was clear error because UC-Davis was not an approved laboratory under section 2034.002(a) of the Texas Occupations Code, which provides that drug testing on a race animal must be performed by either (1) the TVMDL, or (2) a laboratory "selected by the Commission after consultation with the [TVMDL]."[51] But there are two problems with this argument.

First, Appellant did not raise this issue before the Stewards. Because the issue was not raised during the hearing before the Stewards, it should not be considered now "on appeal."[52] As previously stated, this is not a *de novo* trial, in which the court may consider arguments and evidence that are introduced afresh. In this case, the standard of review is clear error, which is an appellant standard.[53] Additionally, an appeal is a "proceeding undertaken to have a decision reconsidered by a higher authority," especially, "the submission of a lower court's or agency's decision to a higher court for review and possible reversal."[54] Implicit in the common understanding of an appeal is the concept of reconsideration or rehearing—that the original issue was presented to the initial decision-maker, here the Stewards.

---

[51] Tex. Occ. Code § 2034.002.

[52] 16 Tex. Admin. Code § 307.67(c).

[53] *Willacy Cty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 42 (Tex. 2018) ("in a trial de novo, a court may consider arguments and evidence that are introduced afresh").

[54] Black's Law Dictionary 104 (8th ed. 2004); see also Webster's New Collegiate Dictionary 54 (1979) ("a legal proceeding by which a case is brought from a lower to a higher court for rehearing").

Copy from re:SearchTX

Second, the record shows that the Commission consulted with the TVMDL on June 26, 2024, and that afterward the Commission sent the samples to UC-Davis for analysis. Ms. Cook's testimony confirmed that the Commission entered into an interagency agreement with TVMDL, and UC-Davis was noted and chosen as the preferred laboratory of the Commission. Ms. Cook further explained that the primary purpose of the meeting was to add "provide" to the previous agreement to allowed TVMDL to perform testing or have testing performed through a subcontractor while still maintaining oversight of the process, as required by statutes. The evidence is sufficient to show compliance with the statute.

### D. THE STEWARDS DID NOT ERR IN ISSUING A RULING ABSENT SPLIT-SAMPLE ANALYSIS ON ALL SAMPLES

Appellant also asserted that the Stewards erred in upholding and continuing the summary suspension without resolving the split-sample issue or permitting a split-sample testing. Based on Mr. Grigsby's testimony, evidence regarding split-samples is not required in the narrowly focused summary suspension hearing. However, the evidence established that the Commission presented one split-sample analysis for Dashin Girlfriend (LS065407). Rule 319.362(e) states that a positive test results from both the original lab and the split-sample lab will establish a "prima facie violation" of the Commission's rules on prohibited substances.[55] At least for Dashin Girlfriend, a prima facie violation was established. The rule does not require that more than one split-sample analysis be done before the Stewards can summarily

---

[55] Prima facie means generally that the evidence is "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." Black's Law Dictionary 1228 (8th ed.).

Copy from re:SearchTX

suspend a license. The Appellant failed to show that more than one corroborating split-sample test was required before imposing a summary suspension.

### E. IT WAS NOT CLEAR ERROR TO DESIGNATE APPELLANT AS THE ABSOLUTE INSURER OF HORSES THAT TESTED POSITIVE.

Appellant asserted that the Stewards erred in inferring that the positive test letters were evidence that Appellant personally or intentionally administered the medication or permitted such administration. But under the law, Appellant was responsible for the horses he trained.

According to the Commission's rules, Appellant is the "absolute insurer" of any horse entered into a race.[56] Additionally, as the trainer, Appellant is responsible for ensuring that each horse in his care and custody is "free from all prohibited drugs, chemicals, or other substances."[57] Essentially, the rule makes the trainer strictly liable for the integrity of the horse.

In Appellant's interpretation of the rule, the Commission is required to present evidence of an act or an intent on Appellant's part to find that he was liable and that his actions constituted an immediate threat. Appellant's interpretation of the rule is unconvincing. Further, because Appellant trained twenty-three horses with positive test results, the Stewards reasonably concluded that his suspension was appropriate.

---

[56] 16 Tex. Admin. Code § 311.104(b)(2).

[57] Tex. Occ. Code § 2034.004(2).

26

Copy from re:SearchTX

**F.** **THE STEWARDS DID NOT CLEARLY ERR BY UPHOLDING THE SUMMARY SUSPENSION PENDING A HEARING ON THE MERITS.**

Appellant argued that the Stewards' ruling to impose a suspension without determining the merits of the case was clear error. Further, Appellant contended that allowing the suspension to continue pending a hearing on the merits amounted to an "indefinite" suspension. Under the Commission's rules, Appellant's complaint about the period of the suspension is not a matter for the ALJ but for the executive secretary, who may grant a stay of the suspension.[58] The Stewards are authorized to interpret and enforce the Act and its rules and to issue rulings.[59] Stewards also have the authority to investigate alleged violations of the Act or rules by a licensee, charge a licensee with a violation, conduct disciplinary hearings, impose fines, and suspend licenses.[60] In this case, after considering the evidence, the Stewards' made a determination to not lift the suspension pending a hearing on the merits.

Pursuant to 16 Texas Administrative Code section 307.62(i), Stewards may summarily suspend a licensee when it determines the licensee's actions pose an immediate danger to the public health, safety or welfare. In this case, Appellant's license was summarily suspended after twenty-three horses he trained tested positive for a prohibited substance. Based on Mr. Grigsby's testimony, the case is still under investigation and positive drug test results for horses trained by Appellant are expected to increase. Under the rule, Appellant was entitled to a

---

[58] 16 Tex. Admin. Code § 307.68.

[59] 16 Tex. Admin Code § 313.22(b).

[60] 16 Tex. Admin. Code § 307.61(a).

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

hearing on the summary suspension The hearing contemplated by section 307.62(i), the summary suspension hearing, was held on February 11, 2025.

Unlike the evidentiary trial, in which a full-blown hearing on the merits occurs, the purpose of summary suspension hearing is narrowly focused: the Stewards must determine whether the summary suspension is warranted, based on whether the continued active licensure of Appellant poses an immediate threat or danger to the public health, safety, welfare. In light of the evidence presented and the narrow focus of the hearing, the ALJ finds that Appellant failed to show that the Stewards committed clear error when upholding the suspension Appellant's license pending a hearing on the merits.

For all the reasons stated above, the ALJ finds that the Stewards' ruling is supported by the evidence presented and further finds that Appellant failed to establish that the Stewards' ruling is clearly erroneous.

## VII. FINDINGS OF FACT

1. Toby Keeton (Appellant) is licensed by the Texas Racing Commission (Commission) as an owner/trainer under license number 3056.

2. On September 14, 2024, Appellant was the trainer of a racehorse, Hocksareback, which won the second race at Lone Star Park, a Texas racetrack.

3. On September 28, 2024, Appellant was the trainer of a racehorse, Dashin Girlfriend, which won second place in the seventh race at Lone Star Park.

Copy from re:SearchTX

4.    On October 3, 2024, Appellant was the trainer of racehorses, Louisiana Mystery, which won second place in the seventh race at Lone Star Park, and Queen of Drama, which won the ninth race at Lone Star Park.

5.    On or about October 4, 2024, Appellant was the trainer of a racehorse, Favorite MVP Z, which won third place in the seventh race at Lone Star Park.

6.    On October 5, 2024, Appellant was the trainer of a racehorse, Hocksareback, which won second place in the eleventh race at Lone Star Park.

7.    On October 10, 2024, Appellant was the trainer of a racehorse, Purple Rain, which won second place in the fourth race at Lone Star Park.

8.    On October 18, 2024, Appellant was the trainer of racehorses, Pt Rose, which won third place in the sixth race at Lone Star Park, and Kati Bug, which won the ninth race at Lone Star Park.

9.    On October 25, 2024, Appellant was the trainer of racehorses, Aguila Rapida, which won the first race at Lone Star Park; Favorite MVP Z, which won the second race at Lone Star Park; Future Look, which won third place in the third race at Lone Star Park; Hard to Politic, which won second place in the fifth race at Lone Star Park; Air Force, which won second place in the sixth race at Lone Star Park; and Lotta Big Love, which won second place in the seventh race at Lone Star Park.

10.    On October 26, 2024, Appellant was the trainer of racehorses, Flyin Rabbit 123, which won second place in the eighth race at Lone Star Park; Shoeless, which won the tenth race at Lone Star Park; and Top Cowboy, which won second place in the eleventh race at Lone Star Park.

11.    On November 1, 2024, Appellant was the trainer of racehorses, Kiss My Tail Lights, which won the second race at Lone Star Park, and Dashin Girlfriend, which won second place in the tenth race at Lone Star Park.

12.    On November 2, 2024, Appellant was the trainer of a racehorse, Queen of Drama, which won the tenth race at Lone Star Park.

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

13. On November 9, 2024, Appellant was the trainer of a racehorse, Pt Rose, which won second place in the eleventh race at Lone Star Park.

14. On November 15, 2024, Appellant was the trainer of a racehorse, Flyin Rabbit 123, which won the seventh race at Lone Star Park.

15. Urine and/or blood samples were collected from each racehorse immediately after the races and were given to Commission representatives.

16. The samples were properly obtained, secured, stored, and transported to the laboratory for analysis.

17. The Commission consulted with the Texas A&M Veterinary Medical Diagnostic Laboratory (TVMDL) on June 26, 2024. The University of California at Davis (UC-Davis) was designated as the preferred laboratory of the Commission and the interagency agreement was amended to allow UC-Davis to provide testing as a subcontractor of TVMDL.

18. The Commission sent the samples to UC-Davis for analysis.

19. UC-Davis performed a scientific analysis of the samples provided.

20. All urine samples tested positive for Carmoterol.

21. Carmoterol is a beta agonist.

22. The blood sample in racehorse Flyin Rabbit 123, collected on November 15, 2024, tested positive for d-Methamphetamine.

23. A split-specimen collected from Dashin Girlfriend on September 28, 2024, was tested at Industrial Laboratories. This entity confirmed the presence of Carmoterol in Dashin Girlfriend on the above-stated date.

24. The use of Carmoterol and d-Methamphetmine in horses could have affected the health or performance of horses and thus posed an immediate and ongoing threat to racing integrity and the public health, safety, or welfare.

25. On January 30, 2025, the Commission's Stewards summarily suspended Appellant's trainer license as a result of the twenty-three positives for

Copy from re:SearchTX

Carmoterol and d-Methamphetamine found on racehorses owned or trained by Appellant.

26.     On February 3, 2025, the Stewards scheduled a summary suspension hearing for February 11, 2024.

27.     On February 12, 2025, the Stewards issued a ruling affirming the summary suspension.

28.     The Stewards' ruling read, "[u]pon consideration of all of the evidence and testimony, the Board of Stewards respectfully decline to lift the summary suspension pending a hearing on the merits."

29.     On February 15, 2025, Appellant appealed the Stewards' ruling and the case was referred to the State Office of Administrative Hearings (SOAH).

30.     On May 13, 2025, Staff sent Appellant the Notice of Hearing. The Notice of Hearing contained a statement of the time, place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and either a short, plain statement of the factual matters asserted or an attachment that incorporated by reference the factual matters asserted in the complaint or petition filed with the state agency.

31.     On May 22, 2025, Administrative Law Judge Roshunda Atchison convened the hearing on the merits via Zoom. Attorney David Holmes represented Commission Staff. Attorneys Clark Brewster and Joseph DeAngelis represented Appellant.

32.     The record was held open to allow the parties to file written closing arguments and file admitted exhibits.

33.     The record closed on June 6, 2025.

## VIII. CONCLUSIONS OF LAW

1.      The Commission has jurisdiction over this matter pursuant to the Texas Racing Act. Tex. Occ. Code §§ 2023.001, .109.

31

Copy from re:SearchTX

2. SOAH has appellate jurisdiction under the clear error standard of review over matters relating to the hearing in this case. Tex. Gov't Code, Ch. 2001, Subchapter D, and Ch. 2003; 16 Tex. Admin. Code 307.67(c).

3. Timely and adequate notice was given in this case. Tex. Gov't Code §§ 2001.051-.052.

4. The Commission's stewards have authority to conduct hearings and impose penalties. Tex. Occ. Code § 2023.106; 16 Tex. Admin. Code § 307.61.

5. A trainer who has care and custody of a race animal is required to guard each animal in his or her custody to prevent the administration of a prohibited drug, chemical, or other substance. 16 Tex. Admin. Code §§ 311.104(b)(2), 319.302.

6. The licensed trainer of a racehorse is considered by law to be the absolute ensurer that no prohibited substance has been administered to the animal. Tex. Occ. Code § 2034.004; 16 Tex. Admin. Code §§ 311.104(b)(2), 319.302.

7. A prohibited substance is a drug that, in its use or intended use, is reasonably capable of influencing or affecting the outcome of a race in a manner contrary to the Texas Racing Act or a Commission rule and is prohibited by a rule regulating the unlawful influence of a race. Tex. Occ. Code § 2021.003(38). Commission rule defines a prohibited drug as any stimulants, depressants, tranquilizers, local anesthetics, drugs, or other drug metabolites that could affect the health or performance of a race animal, however minimal. 16 Tex. Admin. Code § 319.1(b)(1).

8. Carmoterol is a beta-agonist. Beta-agonists are prohibited substances. 16 Tex. Admin. Code § 319.3(f).

9. Methamphetamine is expressly scheduled as a Class1A drug under the Commission's Classification Guidelines for Foreign Substances. Methamphetamine is a prohibited substance. 16 Tex. Admin. Code § 319.1(b)(1).

10. The positive findings by a chemist of a prohibited drug in the test specimens of a horse collected on the day of the race, subject to the rules of the Commission relating to split-specimens, is prima facie evidence that the

Proposal for Decision, SOAH Docket No. 476-25-13726,
Toby Keeton v. Texas Racing Commission

Copy from re:SearchTX

prohibited drug was administered to the horse and was carried in the body of the horse while participating in the race. 16 Tex. Admin. Code § 319.3(e).

11. A person aggrieved by a ruling of the stewards may appeal to the Commission, and those appeals are referred to SOAH for hearing. 16 Tex. Admin. Code §§ 307.67(a).

12. Appellant has the burden of proof at the hearing on the merits to show that the Stewards' ruling was clearly erroneous. 16 Tex. Admin. Code § 307.67(c).

13. Appellant did not prove that the Stewards' ruling to uphold the summary suspend of Appellant's license was clearly in error.

**Signed August 6, 2025**

ALJ Signature:

_____
Roshunda Atchison
Presiding Administrative Law Judge

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Envelope ID: 104035993
Filing Code Description: Proposal for Decision
Filing Description: PROPOSAL FOR DECISION
Status as of 8/6/2025 11:38 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| David Holmes | | david.holmes@txrc.texas.gov | 8/6/2025 11:12:34 AM | SENT |
| Clark Brewster | | cbrewster@brewsterlaw.com | 8/6/2025 11:12:34 AM | SENT |
| Joey DeAngelis | | jcdeangelis@brewsterlaw.com | 8/6/2025 11:12:34 AM | SENT |

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer Foster on behalf of Lauren McGee
Bar No. 24128835
jennifer.foster@oag.texas.gov
Envelope ID: 109044277
Filing Code Description: Brief Requesting Oral Argument
Filing Description: TRC Brief
Status as of 12/12/2025 2:11 PM CST

Associated Case Party: Toby Keeton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Clark Brewster | 786841 | cbrewster@brewsterlaw.com | 12/12/2025 1:40:55 PM | SENT |
| Don Griffin | 8456975 | dgriffin@velaw.com | 12/12/2025 1:40:55 PM | SENT |
| Joseph DeAngelis | | jcdeangelis@brewsterlaw.com | 12/12/2025 1:40:55 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jennifer Foster | | Jennifer.Foster@oag.texas.gov | 12/12/2025 1:40:55 PM | SENT |

Associated Case Party: Texas Racing Commission

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Lauren McGee | | lauren.mcgee@oag.texas.gov | 12/12/2025 1:40:55 PM | SENT |